**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 26-cr-55 (APM)** |
| **v.** | |
| **HIEU TRUNG VU,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The defendant came to the District of Columbia as a fugitive – fleeing from both a deportation order and a Virginia probation violation for drug trafficking. He did not arrive empty-handed. He came to Washington, D.C. armed with two guns, intending to sell cocaine, crack, methamphetamine, amphetamine, and fentanyl. His choices were deliberate. His conduct was dangerous. And the harm it threatened was profound.

Drug trafficking is not a victimless crime. Every sale fuels addiction, violence and the destruction of lives, families and neighborhoods. When a trafficker arms himself with firearms while distributing some of the most dangerous controlled substances available, the danger to the public increases exponentially. The defendant's conduct struck at the heart of the District and warrants a sentence that reflects the seriousness of his crimes.

The defendant has accepted responsibility and is now before the Court to be sentenced for unlawful possession with intent to distribute schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and unlawful possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). In light of the nature of the offenses, the defendant's criminal history, and the need to protect the public and promote respect for the law, the government respectfully requests that the Court impose a sentence of **87 months of imprisonment** to be

followed by three years of supervised release.

## I.      <u>BACKGROUND</u>

On December 4, 2025, at approximately 5:09 AM, the Office of Unified Communications (OUC) received an emergency call from the Complainant, a 16-year-old girl, stating that she was in an apartment with a man, who was subsequently identified as the defendant. The Complainant stated that the defendant was in possession of narcotics. After determining that the location of the offense was an Airbnb located at 1432 Wisconsin, Ave. NW, Washington, D.C. 20007, the Metropolitan Police Department (MPD) obtained a search warrant for the residence and prepared to make entry.

At approximately 4:35 pm that day, MPD entered 1432 Wisconsin Ave, in execution of the search warrant. Located in the rear bedroom was a tan backpack that contained two handguns. Located in the kitchen in a cabinet under the counter was a black backpack that contained bump keys in the front pocket, an iPhone, Samsung cell phone, and a black & tan Coach bag. Inside of the Coach bag was an assortment of what appeared to be narcotics packaged in a variety of different bags. The various substances field tested positive for cocaine and methamphetamine. The Coach bag also contained drug paraphernalia and a Chime card in the name of the defendant.

Law enforcement submitted the narcotics for testing and received the following results: 48.09 grams of a mixture containing Methamphetamine, 14.11 grams of a mixture containing Cocaine, 1.99 grams of a mixture containing Cocaine Base, 5.66 grams of a mixture containing Amphetamine, and 10.13 grams of a mixture containing Fentanyl.

//

//

//



*Image of the Methamphetamine, cocaine, and cocaine base contained in various packaging.*

The defendant acknowledged that he possessed the Methamphetamine, Cocaine, Cocaine Base, Amphetamine, and Fentanyl with the intent to distribute them to other people. He knew at the time that he possessed each of these drugs, that each was a controlled substance.

The recovered firearms were a Glock 43X, 9X19 caliber pistol, bearing serial number BYGY103, and a CZ model 27, 7.65 caliber pistol, bearing serial number 170928. The Glock was loaded with nine rounds of 9mm ammunition in the 10-round capacity magazine.

//

//

//

//

//



*Image of the Recovered Glock*



*Image of the CZ*

The defendant was prohibited from possessing a firearm as he had previously been convicted of multiple crimes punishable by imprisonment for a term exceeding one year.

On December 8, 2025, the government charged the defendant by complaint in U.S. District Court. An initial appearance was held before Magistrate Judge Upadhyaya on that same day. At

4

that hearing, the government moved for detention. The government filed a memorandum in support of pretrial detention the following day. (ECF No. 6). At the detention hearing on December 10, 2025, the defendant elected to concede detention.

On March 31, 2026, the defendant entered guilty pleas pursuant to a negotiated agreement, to Count 1: Unlawful Possession with Intent to Distribute Methamphetamine (mixture), Cocaine (mixture), Amphetamine (mixture), Cocaine Base (mixture), and Fentanyl (mixture), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); and Count 2: Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 24). As part of this agreement, the defendant has agreed not to contest his final order of removal from the United States. (ECF No. 24 at 12). Pursuant to the plea agreement, the parties calculated the defendant's sentencing guidelines range at 70 – 87 months in final offense level at 23 in Criminal History Category IV.[1]

Sentencing is scheduled for July 30, 2026, at 10:00 AM.

## II.   LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will

---

[1] Based on new information from the Final Presentence Investigation Report, the defendant's criminal history category is actually IV, raising his guidelines range to 92-115 months.

ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

*Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> (i) issued by the Sentencing Commission . . .; and
> (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
> (A) issued by the Sentencing Commission . . . and
> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.*at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies

broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

### III.     THE GOVERNMENT'S SENTENCING RECOMMENDATION

#### A.  The Nature and Circumstances of the Offense

The defendant, a 37-year-old convicted drug dealer, traveled to Washington, D.C. to sell drugs while armed with two firearms. Notably, the defendant was selling fentanyl – a drug that killed 315 people in the District of Columbia in 2024. *See* Center for Disease Control, *Drug Overdose Mortality*, https://www.cdc.gov/nchs/state-stats/deaths/drug-overdose.html (last visited July 21, 2026). The defendant was also selling cocaine, amphetamine, and methamphetamine, which, when mixed with fentanyl, increases the likelihood of a fatal interaction. *See* U.S. Drug Enforcement Administration, *Facts About Fentanyl*, https://www.dea.gov/resources/facts-about-fentanyl (last visited July 21, 2026). Just two *milligrams* of fentanyl could constitute a lethal dose, and the defendant was arrested with 10.129 *grams* – risking the lives of every single person who encountered his narcotics. *See id.* Even worse, he was doing this in the presence of a 16-year-old

girl.

Drug dealing is "a violence-prone business" and the fact that the defendant was armed while doing so in this case only increased the level of danger and seriousness of these offenses. *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see also United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting "the illegal drug industry is, to put it mildly, a dangerous, violent business"). As this Court and the Supreme Court have noted, "[d]rugs and guns are a dangerous combination." *United States v. Brown*, 538 F. Supp. 3d 154, 169 (D.D.C. 2021) (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993)). The combination of fentanyl trafficking and loaded firearms presents precisely the type of grave danger that Congress intended to punish severely.

In essence, the defendant's offenses in this case were serious, highly dangerous, and justify an 87-month term of incarceration.

### B. The History and Characteristics of the Defendant

Since the defendant's entry to the United States in December of 1997, he has repeatedly committed serious crimes despite significant periods of incarceration and court supervision. In 2009, at age 20, the defendant was convicted of assaulting a law enforcement officer. His conduct only escalated from there.[2]

On February 16, 2011, the defendant applied for an I-90 to replace his Lawful Permanent Resident card. On May 20, 2011, the defendant's application was approved.

In 2015, the defendant incurred multiple arrests resulting in convictions for identity theft,

---

[2] Fairfax County General District Court case number GC09123068.

petit larceny, and the illegal possession of methamphetamine.[3] The defendant was sentenced to probation in these cases.

On July 31, 2015, the defendant was issued a notice to appear for removal proceedings based on his ongoing criminality. Although an immigration judge granted cancellation of removal on July 11, 2016, that second chance did nothing to deter his behavior.

In 2017, the defendant was again arrested for illegal drug possession, and received his first term of imprisonment, where he was sentenced to two years of incarceration, with all but one year and nine months suspended.[4] Less than two months after his release from prison, he was arrested, charged, and convicted of even more serious crimes.

According to the Presentence Investigation Report in this case, on July 5, 2019, Fairfax County Police were dispatched to a motel. A patron reported that after he paid for a room, he accidentally left his credit card. Surveillance footage showed the defendant, who was next in line, take the card from the reader. Subsequently, several fraudulent charges appeared on the patron's bill. Police went to the defendant's room and a female answered, saying that the defendant was staying there but had gone to DC and had not come back. Police observed drug paraphernalia and searched the room, finding the patrons credit card, as well as a pistol, and a box of ammunition. They discovered the defendant hiding in a bathroom. The defendant stated in the presentence report, ""I was going through depression and had been on medication in jail. After my release, I had trouble getting them through my insurance and began self-medicating. I was in a dark cloud and couldn't get out of it. This led to criminal thinking and behavior. I had the firearm because I was thinking about committing suicide."

---

[3] Fairfax County General District Court case numbers GC15000039-00 and GC15204956-00.
[4] Fairfax County Circuit Court case number FE-2018-1073.

On May 8, 2020, the court sentenced the defendant to three years of incarceration, with all but 10 months suspended for weapon possession, 60 days of incarceration for obstruction, and two years of incarceration, with all but 10 months suspended for credit card larceny.

Again, these sentences did nothing to deter the defendant from committing more crimes. On October 27, 2020, the defendant was arrested for Possession with the Intent to Distribute a Schedule I/II Controlled Substance in Fairfax County, Virginia Circuit Court Case number FE-2022-0000332. According to the Presentence Investigation Report in that case, the defendant was pulled over while driving a vehicle, and the police recovered a quantity of fentanyl inconsistent with personal use. The defendant stated "I apologize. I had a moment of relapse and made some bad choices. I hung out with some people I shouldn't have hung out with." On November 18, 2022, the defendant was sentenced to 5 years confinement, with 2 years and 4 months suspended, to be followed by 2 years of probation.

On February 20, 2024, the defendant was released from prison into ICE custody. On April 2, 2024, an immigration judge ordered his removal to Vietnam. As of September 11, 2024, the defendant became a loss of contact, and his electronic monitor stopped responding.[5] Whether the defendant intentionally cut off the monitor or simply failed to keep it charged, the result was the same: he absconded from ICE supervision and became a fugitive from his lawful removal order, as well as a probation violation in Virginia. The defendant only came back into custody when he was arrested for armed drug dealing in this case.

The defendant's immigration history mirrors the same pattern reflected throughout his criminal record. Despite repeated opportunities for leniency – including cancellation of removal, probationary sentences, community supervision, and release by ICE pending removal – he has

---

[5] ICE is unable to determine whether Vu cut off the monitor or if it died and was not recharged.

repeatedly chosen to disregard the law and ignore court-ordered conditions. His conduct demonstrates that prior sanctions have failed to deter him and that he cannot be trusted to comply with conditions of supervision. A substantial term of imprisonment is therefore necessary to promote respect for the law, protect the public, afford adequate deterrence, and reflect the seriousness of his persistent criminal conduct.

### C.  The Need for the Sentence Imposed

A sentence of 87 months of imprisonment is necessary for specific and general deterrence, as well as public safety. The defendant's lengthy criminal history has shown that shorter periods of incarceration have done little to deter his dangerous criminal behavior. Although the defendant will be deported to Vietnam after his term of imprisonment, this status cannot serve as a pass from criminal punishment. Deportation without a significant prison sentence for armed drug dealing would send a dangerous message to non-citizens hoping to commit crimes in our country.

Time and time again, the defendant has engaged in dangerous criminal behavior, regardless of his terms of incarceration or periods of court supervision. Accordingly, a lengthy term of imprisonment is needed for the defendant.

### D.  The Need to Avoid Unwarranted Sentencing Disparities

According to the Judiciary Sentencing Information ("JSIN"), the average sentence for defendants being sentenced for methamphetamine in criminal history category VI and offense level 23 was 82 months and the median length of imprisonment was 84 months. Although the government is requesting a sentence that is slightly higher than both the median and average, the particular circumstances of this case justify this modest discrepancy. The data provided by JSIN does not necessarily contemplate whether a defendant was armed as part of their offense – in this case the defendant was prohibited from carrying a firearm due to his prior convictions but did so.

The defendant further committed these offenses while in abscondence from both ICE supervision and probation in Virginia. Thus, these circumstances justify a term of 87 months of incarceration and would not subject the defendant to any unwarranted sentencing disparities.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence the defendant to a term of 87 months of imprisonment, to be followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:  /s/ *David B. Liss*
DAVID B. LISS
Assistant United States Attorney
D.C. Bar No. 90017629
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-680-4025
Email: David.liss2@usdoj.gov